UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHAD GANEE,

            Plaintiff,

    v.                                     CASE NO. 6:20-CV-253-Orl-MAP

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

_____/

**<u>ORDER</u>**

This is an appeal of the administrative denial of disability insurance benefits (DIB) and period of disability benefits.[1] *See* 42 U.S.C. § 405(g).  Plaintiff argues the administrative law judge (ALJ) erred by discounting the opinions of his treating physician Stephen Goll, M.D. and state agency medical expert Larry Meade, M.D. and by discounting Plaintiff's subjective pain complaints.  After considering the parties' arguments (Docs. 15, 16) and the administrative record (Doc. 10), I find the Commissioner's decision is supported by substantial evidence.  I affirm.

    *A.*    *Background*

Plaintiff Shad Ganee was born on May 14, 1966, and was 48 years old on his alleged disability onset date of January 15, 2015. (R. 22)  On that date he was working for a communications company installing underground cable for a bus company.  He and his coworker were prying up a manhole cover to access cable when the cover slipped out of their hands.  In his words, "it pull[ed] me and crush[ed] my finger and pull[ed] my neck and back.  My finger was smash[ed] and my neck and back were pull[ed]." (R. 511)  He was treated that day at Lakeside

---

[1] The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

1

Occupational Medical Center in Orlando.  His finger wound required stitches, and he was prescribed a pain reliever and a muscle relaxer for his back and told to do certain exercises to alleviate his pain. (R. 499-500) He tried to control his back pain with lumbar injections, medication, and physical therapy for approximately four months before deciding to proceed with surgery (a lumbar discectomy) at the recommendation of his treating orthopedic surgeon, Dr. Goll, of the Orlando Orthopedic Center. (R. 409)  Before Plaintiff could schedule the surgery, however, he settled his worker's compensation claim, rendering any treatment obtained after the settlement date Plaintiff's financial responsibility (R. 410); he did not have the surgery.  His medical records post-worker's compensation settlement consist of treatment notes from Forest City Community Health Center and a physical therapy clinic.

To backtrack, since graduating high school, Plaintiff's past relevant work (PRW) was as a cable line technician, an appliance assembler, and a construction worker. (R. 56-61)  Plaintiff lives with his wife and two children. (R. 51)  He testified that since his January 2015 accident, he can stand, sit, or walk for only 10 to 20 minutes at a time before he feels a burning pain in his neck and back. (R. 308)  His pain medication helps relieve his discomfort somewhat but also puts him to sleep. (R. 333) When he wakes up, he is in pain all over again.  This chronic pain impacts his mood; for example, he quarrels with his wife more than he did before his accident. (*Id.*)

After a December 2017 administrative hearing, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease (DDD) of the lumbar spine and degenerative joint disease (DJD) in his left shoulder but that he maintained the residual functional capacity (RFC) for light work. (R. 94-110) The ALJ found Plaintiff could return to his past relevant work as a printed circuit board reworker and was not disabled.  In November 2018, however, the Appeals Council (AC) remanded Plaintiff's case to the ALJ to perform a more detailed evaluation of Dr. Gall's opinion

2

and because the job the ALJ identified as PRW was not (Plaintiff had not worked as a printed circuit board reworker in more than 15 years). (R. 111-14)  So the same ALJ held a second hearing in July 2019. (R. 52-71)  The next month, she identified lumbar DDD, left shoulder DJD, and side effects of medication as Plaintiff's severe impairments and again found Plaintiff not disabled, because he maintained the RFC for light work with some limitations. (R. 20)   Specifically,

> [C]laimant has the RFC for light work (20 CFR 404.1567(b)), except sit up to 50% of the workday; occasionally balance, steep, kneel, crouch, crawl, and climb ramps and stairs, but no ladders, ropes, or scaffolds; avoid work at heights, work with dangerous machinery, overhead reaching, foot controls, constant vibration, and constant temperatures over 90 degrees and under 40 degrees F.  Work tasks should be learned in 90 days.

(*Id.*)  The ALJ found that, with this RFC, Plaintiff could not perform his past work but, after consulting a vocational expert at the hearing, determined Plaintiff could work as a hand packer, small parts assembler, and shipping and receiving weigher. (R. 23) Plaintiff appealed the ALJ's decision to the AC, which this time denied review. (R. 1-4)  Plaintiff, his administrative remedies exhausted, filed this action.

      B.    *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 423(d)(1)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations.  These regulations establish a "sequential evaluation process" to determine if

a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

4

C.    Discussion

1.    ALJ's consideration of Drs. Goll and Meade's opinions

Plaintiff argues the ALJ erred by discounting Dr. Goll's opinion, seconded by non-examining physician Dr. Meade, that Plaintiff is limited to sedentary work (Doc. 15).  The Commissioner responds that substantial evidence supports the ALJ's decision because Plaintiff's treatment was conservative and his physical exams indicated his symptoms were controlled with medication (Doc. 16).  On this record, I agree with the Commissioner.

The method for weighing medical opinions under the Social Security Act is in the regulations at 20 C.F.R. § 404.1527(c).[2]  Relevant here, the opinions of examining physicians are generally given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 404.1527(c)(1-5).  A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

This rule – the "treating physician rule" – reflects the regulations, which recognize that treating physicians "are likely to be the medical professionals most likely to provide a detailed, longitudinal picture of . . . medical impairment."  20 C.F.R. § 404.1527(c)(2).  With good cause, an ALJ may disregard a treating physician's opinion but "must clearly articulate the reasons for

---

[2] This section was rescinded on March 27, 2017, but still applies to claims filed before this date. Plaintiff filed his claim in July 2015. (R. 260-61)

doing so." *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (*quoting Phillips v. Barnhart*, 357 at 1240 n.8).  And the ALJ must state the weight given to different medical opinions and why.  *Id.*  Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The ALJ assigned Dr. Goll's opinion "little weight, as it strongly appears to be temporary in nature." (R. 21)  The ALJ reasoned that Dr. Goll's restrictions were "the result of a Workers' Compensation form showing claimant had not achieved maximum medical improvement (MMI) (#24); and, the next appointment date and time had yet to be scheduled (#28).  Dr. Goll's restrictions of February and April 2015 are not entirely consistent with evidence of record; and, are given little weight."[3] (R. 21) For the reasons explained below, the ALJ had good cause to discount Dr. Goll's opinion.

Plaintiff had a lumbar spine MRI on January 26, 2015, about 10 days after his accident, that showed moderate spinal stenosis at L5-S1, disc bulging and mild to moderate stenosis at L4-L5, and S1 was "lumbarized."[4] (R. 503)  Plaintiff had his first of three appointments with Dr. Goll on February 16, 2015, one month after his accident. (R. 413-16) Plaintiff described his accident and the resulting back pain that radiated down his left leg.  Pain kept Plaintiff up at night, and he rated his pain level as an eight out of 10.  He reported that "[a]ny sort of motion or bending increases his pain; rest relieves the pain. He has numbness and tingling in the left leg and a sense of weakness in the left leg." (R. 413) Dr. Goll reviewed Plaintiff's MRI and X-rays of four views

---

[3]  The numbers in parentheses refer to numbered questions on a worker's compensation form Dr. Goll completed on Plaintiff's behalf. (R. 544-45)

[4]  This term refers to nonfusion of the first and second segments of the sacrum and is usually a congenital abnormality.

of Plaintiff's spine taken that day at his office and diagnosed Plaintiff with a herniated lumbar disc at left side L4-5 and associated left lumbar radiculopathy. (R. 413-16) He ordered physical therapy two to three times a week for four weeks, prescribed Prednisone (an anti-inflammatory), Ultram (a pain reliever), and Flexeril (a muscle relaxer), and administered a Lidocaine left paraspinal trigger point injection.  Dr. Goll directed Plaintiff to follow up in one month and limited him to "light duty [work] of no lifting more than 10 pounds, no bending, no prolonged standing or walking.  Sedentary work only."[5] (R. 416)

Plaintiff returned to Dr. Goll on March 12, 2015, with no improvement. (R. 411)  He had attended six physical therapy sessions and taken his medication as prescribed.  His lumbar spine was painful to the touch, and he had decreased range of motion and decreased sensation at L5. (*Id*.)  Dr. Goll gave him two treatment options: continue with physical therapy and medication in hopes of improvement, or proceed with an L4-5 lumbar discectomy. (*Id*.) Dr. Goll reported that Plaintiff "wants to try a few more weeks of therapy before submitting to surgery. . . . Follow-up in four weeks.  He will be three months post-onset of symptoms at that time.  If no improvement, I would recommend at that time lumbar discectomy L4-5 left." (R. 411-12)

Plaintiff's final appointment with Dr. Goll was April 9, 2015. (R. 409)  His symptoms were worsening and "starting to migrate over to the right side of the back.  He has been going through physical therapy and taking the oral medications that we prescribed.  These are not helping." (*Id*.) Dr. Goll noted on a worker's compensation form that Plaintiff had not reached maximum medical improvement. (R. 544-45)  He recommended surgery, and Plaintiff agreed.  The orthopedic surgeon wrote:

---

[5]  Although Dr. Goll also uses the term "light work," his prescribed limitations correspond to the sedentary work level.  *See* 20 C.F.R. § 404.1567(a).

> He understands the nature of his condition. He understands his options. He wishes to proceed with surgery. We did discuss possible injections, but he does not want to pursue that. His pain is too significant. He wants pain relief. I agree with surgery at this time, not only for pain relief but also because he has objective motor deficit as outlined above. <u>In the meantime, he should continue same light-duty work restrictions as previously assigned of no lifting greater than 10 pounds, no bending, no prolonged standing or walking, sedentary work only.</u>

(R. 410) (emphasis in original)  Plaintiff did not proceed with surgery, however, and did not return to Dr. Goll. This note appears in his file on April 27, 2015: "Chart note. Received notification from workers' compensation dated 4/24/15 stating the workers' compensation case . . . has been settled and any treatment and/or services provided after 4/24/15 are the responsibility of the patient. Patient's financial class changed." (R. 410)

The next treatment record is dated June 20, 2015, from Community Health Centers in Orlando for a well exam. (R. 426)  Plaintiff reported no medical issues except for chronic back and left shoulder pain. Frank Aran-Serrano, M.D. ordered bloodwork, refilled Plaintiff's prescriptions for pain medications and muscle relaxers, and referred him to Greater Orlando Neuro and Spine for evaluation of his back and shoulder pain. (R. 427)  In September 2015, during a follow-up appointment, Dr. Aran-Serrano referred Plaintiff to a neurosurgeon and a pain medicine doctor for his back pain, refilled Plaintiff's medications, and observed that "Patient reports his current regime is fairly good." (R. 491)  There is no record evidence that Plaintiff followed up with the referred treatment providers.

Instead, Plaintiff pursued another round of physical therapy toward the end of 2015, focused on his left shoulder pain rather than his back pain. In September 2015, physical therapist Michelle McNabb evaluated Plaintiff's left shoulder. (R. 445)  Plaintiff relayed that a workplace accident injured his back and shoulder but that his shoulder pain was "put on the back burner" immediately after the accident because of his disc herniation. But his left shoulder pain had

increased, and his shoulder "locked" periodically. (*Id.*)  X-rays revealed low grade instability and a possible labral tear.  Plaintiff's pain was a nine out of 10 when his shoulder locked, but otherwise he had no shoulder pain.  When his shoulder locks, his left arm goes numb and feels heavy until Plaintiff "self-corrects" it (forces his shoulder back into place on his own). (R. 446)  He had decreased left shoulder strength and range of motion and was unable to tuck in his shirt or pull it over his head.  Ms. McNabb recommended physical therapy two times a week for eight weeks; Plaintiff was apprehensive at first for fear his shoulder would lock during therapy but agreed. (R. 449)

Overall, substantial evidence supports the ALJ's decision to discount Dr. Goll's opinion that Plaintiff could only work at the sedentary level. (R. 21)  Namely, in April 2015, Dr. Goll determined Plaintiff had not yet reached maximum medical improvement, suggesting his restrictions were only temporary. (R. 544) From a review of Plaintiff's medical treatment in 2016 and 2017, it appears his back pain was indeed controlled with medication.  To be sure, Plaintiff's progress toward controlling his pain often was followed by setbacks.  In October 2015, Plaintiff was "able to do supine and S/L, standing scap stab exercises pain free." (R. 454)  He had full range of motion in his left shoulder and his physical therapist noted he was pain free. (*Id.*)  But at his November 2015 PT appointment, Plaintiff was "unable to stand or lay supine" for exercises due to aggravation of his lower back pain.  His PT suggested he see a doctor and noted that "surgical intervention may be warranted." (R. 261)

The remainder of his treatment notes from 2015 through 2017, however, are all from Community Health Centers for routine treatment.  For example, in September and December of 2015, and March of 2016, Plaintiff reported for routine follow-up appointments and medication refills (R. 487-491); he had a yearly physical in June 2016 (R. 480); he picked up eyeglasses later

that month (R. 483); he had an appointment for lab results and medication refills in July 2016 (R. 474); he complained of multiple bumps on his scrotum in January 2017 (R. 470); he had a CT scan and follow-up appointment in March and April 2017, for an impacted colon (R. 468-70); and he reported for medication refills in May 2017. (R. 493)  He reported lower back pain at many of these appointments but otherwise did not seek treatment beyond medication refills.

Additionally, Plaintiff did not follow-up with referrals to specialists to address his back and shoulder pain, and he testified that the shoulder pain that sent him to physical therapy in 2015 had resolved as of the date of Plaintiff's second administrative hearing (he had neck pain instead). (R. 61) Although Plaintiff implies that once his worker's compensation claim settled he could not afford the back surgery he needed, Plaintiff does not argue the ALJ failed to fully develop the record regarding his ability to pay.  Moreover, Plaintiff had previously declined surgery and was able to seek other treatment (such as physical therapy for his shoulder and a CT for an impacted colon) in 2016 and 2017, when necessary, and obtain medication refills.  In other words, there are no significant gaps in his medical treatment.

For these reasons, substantial evidence also supports the ALJ's decision to discount Dr. Meade's December 2015 RFC assessment, which tracks Dr. Goll's. (R. 85-88)  The ALJ's task of formulating a claimant's RFC is a legal, not a medical, one; the ALJ was not duty-bound to accept Drs. Goll and Meade's RFC assessment so long as the ALJ supports her findings with substantial evidence.  *See* 20 C.F.R. § 404.1546(c).  Here, for the reasons stated above, she has done so.  The ALJ did not err in her consideration of the medical opinions.

2.    *ALJ's consideration of Plaintiff's subjective pain complaints*

Plaintiff's next contention is that the ALJ's consideration of his back pain ran afoul of the Eleventh Circuit's pain standard.  The Eleventh Circuit has crafted a pain standard to apply to

claimants who attempt to establish disability through their own testimony of subjective complaints. The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain.  *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991).  When the ALJ decides not to credit a claimant's testimony as to his pain, she must articulate explicit and adequate reasons for doing so.  *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Id.*  Adjudicators, as the regulations dictate (*i.e.*, 20 C.F.R. § 404.1529), are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record.  *Id.*  The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings.  20 C.F.R. § 404.1529.  "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received.  *See* 20 C.F.R. § 404.1513(b)(2)-(6).  In the end, credibility determinations are the province of the ALJ.  *Mitchell,* 771 F.3d at 782.

Here, the ALJ relied on largely boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; [however, the] allegations of intensity, persistence and limiting effects of these symptoms are not entirely consistent with medical and other evidence of record.

11

(R. 20-21)  This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence.  *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013).

Here, I find that it is.  The ALJ summarized Plaintiff's testimony as follows: "Impairments worsened at the neck and back.  He takes 4 medications, one of which helps pain, but others cause itchiness, diarrhea, dizziness, and sleep issues.  Claimant can lift 3-4 pounds, sit 10 minutes, stand and walk 20 minutes, and he uses a cane.  He cannot do much with the right hand and has to pop his left shoulder back into place." (R. 20)  His back pain was constant, his medications made him drowsy, and "[h]e can sit, stand, and walk for a short time." (*Id*.)  During his second administrative hearing, Plaintiff testified that his medications help with his pain but cause fatigue and diarrhea. Since his first hearing, he had "gotten worser.  Some things got fixed.  I couldn't lie about it.  My shoulder was bothering me.  That had become okay.  But my neck seems to bother me more.  My neck seems to freeze up all the time now." (R. 61)  Plaintiff testified that his doctor told him there was nothing he could do for him.  His neighbor gave him a cane for walking, which "seems to help." (*Id*.)  But, in general, he wakes up "and can't do nothing.  I feel and started thinking that most of the time, I think, I don't know why, I'm no use.  I cannot serve any purpose.  It sound funny, but I feel like I'm not serving any purpose in this life, what do I do here.  I can't do anything properly." (R. 62)

But, as summarized in the previous section, Plaintiff's medical records do not tell the story of someone with disabling pain.  Treatment notes from Dr. Aran-Serrano of Community Health Centers from late 2015 through 2017 (his only treating physician during this period), document a medication regimen that stayed constant and which Plaintiff himself characterized as "fairly good." (R. 491)  Plaintiff reported some improvement of his pain and range of motion to his physical

therapist, and, after 2015, did not pursue physical therapy, injections, or surgery, opting instead to attempt to control his pain with medications. (R. 61, 454, 489, 491)

On this record, the ALJ's consideration of Plaintiff's subjective complaints of pain is supported by substantial evidence. At this point in the analysis I emphasize that, to the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if I would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). In other words, I am not permitted to reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision. *See Bloodsworth*, 703 F.2d at 1239. On this record, the ALJ did not err in considering Plaintiff's complaints of back pain and limiting him to light work.

>    D.    *Conclusion*

For the reasons stated above, it is ORDERED:

>    (1) The ALJ's decision is AFFIRMED; and

>    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on December 11, 2020.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE